

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: 879-1133

The Bank of New York Mellon Trust Co. N.A. f/k/a The Bank
of New York Trust Co. N.A. as successor in interest to
JPMorgan Chase Bank; National Association, f/k/a JPMorgan
Chase Bank, as successor in interest to Bank One, National
Association, as Trustee for ACE Securities Corp. Home Equity
Loan Trust, Series 2003-HS1, Asset Backed Pass-Through
Certificates

Case Number    13 - 0 0 0 7 5 8 4

                                        Plaintiff,

                    vs.

Internal Revenue Service

                                        Defendant

## SUMMONS

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    Your are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays.  You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

_____ **David Chen** d *Patrick Jules*
Name of Plaintiff's Attorney

9409 Philadelphia Rd
Baltimore, MD 21237
(410) 284-9600

*Clerk of the Court*

By  *Adrienne J. Marsh*
                        Deputy Clerk

Date    11 8 2013

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시오         የትርጉም አገልግሎት ለማግኘት ይደውሉ (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITH THE REQUIRED TIME.*

    If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español



**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
500 Indiana Avenue, N.W., Suite 5000
Washington, DC 20001 Teléfono 879-1133

The Bank of New York Mellon Trust Co. N.A. f/k/a The Bank
of New York Trust Co. N.A. as successor in interest to
JPMorgan Chase Bank, National Association, f/k/a
JPMorgan Chase Bank, as successor in interest to Bank One,      Número de Caso: _____
National Association, as Trustee for ACE Securities Corp.
Home Equity Loan Trust, Series 2003-HS1, Asset Backed
Pass-Through Certificates

                                                    Demandante,

                        contra

Internal Revenue Service

                                                    Demandado

                                **CITATORIO**

Al susodicho Demandado:

        Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta,
sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya
recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en
calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de
Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su
Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El
nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que
enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

        A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en
500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del
mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le
entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al
demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted
para que se haga efectivo el desagravio que se busca en la demanda.

_____               *SECRETARIO DEL TRIBUNAL*
        **David Chen & Patrick Jules**
Name of Plaintiff's Attorney

**9409 Philadelphia Rd**                          By_____
**Baltimore, MD 21237**                                        Subsecretario
**(410) 284-9600**
                                                  Date_____

如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828
        번역을 원하시면, (202) 879-4828 로 전화주십시오           የአማርኛ አስተርጓሚ ለማግኘት (202) 879-4828 ይደውሉ

        IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES
MENCIONADO, O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA
DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO
DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O
PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED
PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

        Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del
Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000
del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

                        Vea al dorso el original en inglés

**DISTRICT OF COLUMBIA SUPERIOR COURT**
**CIVIL BRANCH**
500 Indiana Avenue, NW
Washington, D.C. 20001

> RECEIVED
> Civil Clerk's Office
>
> NOV 0 8 2013
>
> Superior Court of the
> District of Columbia
> Washington, D.C.

THE BANK OF NEW YORK MELLON
TRUST CO. N.A. F/K/A THE BANK OF
NEW YORK TRUST CO. N.A. AS
SUCCESSOR IN INTEREST TO
JPMORGAN CHASE BANK, NATIONAL
ASSOCIATION, F/K/A JPMORGAN CHASE
BANK, AS SUCCESSOR IN INTEREST TO
BANK ONE, NATIONAL ASSOCIATION,
AS TRUSTEE FOR ACE SECURITIES
CORP. HOME EQUITY LOAN TRUST,
SERIES 2003-HS1, ASSET BACKED PASS-
THROUGH CERTIFICATES
c/o Morris | Hardwick | Schneider, LLC
   9409 Philadelphia Road
   Baltimore, MD 21237

Case No.: 13 - 0 0 0 7 5 8 4

Judge Assigned:
Next Event:

                    Plaintiff,

.v.

**PERRY M. BRYANT**
2223 R Street, SE
Washington, DC 20020

AND

**DEPARTMENT OF TREASURY**
**INTERNAL REVENUE SERVICE**
500 N. Capital Street, NW
Washington, DC 20221
                    Defendant(s).

## COMPLAINT FOR JUDICIAL FORECLOSURE

### ACTION INVOLVING REAL PROPERTY

The Bank of New York Mellon Trust Co. N.A. f/k/a The Bank of New York Trust Co. N.A. as successor in interest to JPMorgan Chase Bank, National Association, f/k/a JPMorgan Chase Bank, as successor in interest to Bank One, National Association, as Trustee for ACE Securities Corp. Home Equity Loan Trust, Series 2003-HS1, Asset Backed Pass-Through Certificates

("Plaintiff") by and through counsel, Mark H. Wittstadt, Gerard Wm. Wittstadt, Jr., David Chen, Patrick Jules, and Morris | Hardwick | Schneider, LLC, files this action seeking a judicial foreclosure, pursuant to *D.C. Code § 42-816*, and states as follows:

## PARTIES AND JURISDICTION

1.      Perry M. Bryant ("Perry M. Bryant") is the record owner of certain real property located

at 2223 R Street, SE, Washington, DC 20020, more specifically described as:

> Lots Ninety-seven and Ninety-eight (97 & 98) in Square Fifty-six Hundred Twenty-four (5624) in a subdivision made by the United States Realty Company of Washington D.C., Inc., of part of a tract of land known as "Randle Highlands", as per plat recorded in Liber County 21 at folio 30 among the Records of the Office of the Surveyor for the District of Columbia.
>
> ALSO
>
> Lot Ninety-six (96) in Square Fifty-six Hundred Twenty-four (5624) in a subdivision made by United States Realty Company of Washington, D.C., as per plat recorded in Liber County 21 at folio 30 among the Records of the Office of the Surveyor for the District of Columbia; Saving and Excepting therefrom the West 5.00 feet front on "R" Street, S.E., by a depth of 36.00 feet of said lot.
>
> NOTE: At the date hereto the above described land is designated on the Records of the Assessor of the District of Columbia for taxation and assessment purposes as Lot 810 in Square 5624.
>
> The improvements thereon being known as No. 2223 R Street, SE

(hereinafter "the Property") by virtue of a title deed, recorded with the Recorder of Deeds at Document Number 9900085324 see attached Deed, Exhibit A.

2.      The Property is located within the District of Columbia.

3.      Plaintiff is the beneficiary of a Note secured by the Property.

4.      The Court has personal jurisdiction over the Defendant herein.

5.      Venue is proper in the Superior Court of the District of Columbia.

## FACTS

6.    On March 18, 2003, Plaintiff encumbered the Property with a Deed of Trust securing a
      Note in the original principal amount of One Hundred Ninety-One Thousand Two
      Hundred Fifty and 00/100 Dollars ($191,250.00), see attached Note, Exhibit B, and Deed
      of Trust, Exhibit C, both of which are incorporated hereto by reference.

7.    The Deed of Trust was recorded with the Recorder of Deeds for the District of Columbia
      on April 3, 2003 as Document Number 2003038984.

8.    The original Lender, SouthStar Funding, LLC, assigned its rights under the Note and
      Deed of Trust to Plaintiff, see Exhibit D attached and incorporated hereto by reference.

9.    The Plaintiff is the current holder of the Note and beneficiary of the Deed of Trust
      aforesaid.


## COUNT I - Judicial Foreclosure

**Plaintiff incorporates by reference all those facts and allegations contained above.**

10.   On March 1, 2012, Perry M. Bryant defaulted on the Note by failing to make the required
      payments due and owing under the Note.

11.   On or about May 17, 2013 pursuant to the Deed of Trust, Plaintiff caused to be mailed to
      Perry M. Bryant a demand letter stating the total amount needed to cure the default, see
      attached Exhibit E.

12.   Perry M. Bryant failed to cure the default, and therefore, pursuant to the terms of the
      Deed of Trust, the loan was accelerated.

13.   The account is due and owing as of November 2, 2013 for the following:

      a.  Unpaid Principal Balance:              $          226,542.02

| | | | |
|---|---|---|---|
| b. Escrow Bal/Adv | $ | | 9,785.64 |
| c. Accrued Interest (at date of default @ 2.625% from 2/1/2012 to 11/2/2013) | $ | | 10,111.16 |
| d. Late Charges | $ | | 988.89 |
| e. Fees and Expenses | $ | | 7,919.50 |
| f. Total | $ | | 255,347.21 |

14. Interest, taxes, insurance and other elements of the debt continue to accrue daily. Costs and legal fees incurred herein may be added to the debt consistent with the Deed of Trust.

15. Department of Defense records indicate Perry M. Bryant is not in active military duty, see attached Exhibit F.

16. Plaintiff lawfully appointed Mark H. Wittstadt and Gerard Wm. Wittstadt, Jr., ("the Wittstadts") as Substitute Trustees under the Deed of Trust through a Deed of Appointment of Substitute Trustees recorded with the Recorder of Deeds for the District of Columbia, see attached Exhibit G.

17. D.C. Code §42-816 permits the court to decree "that the mortgagor be foreclosed and barred from redeeming the mortgaged property."

18. Plaintiff is entitled to enforce its Deed of Trust via a judicial foreclosure of the Property.

19. D.C. Code §42-815.02, only applies to a non-judicial foreclosure proceeding under the power of sale clause of the deed of trust, which in this instant case does not apply.

20. Neither mediation nor any mediation certificate is required herein.

21. Plaintiff is willing to participate in a mediation conducted by a neutral third-party mediator if Defendant(s) appears and requests the same.

22.   Mark H. Wittstadt and Gerard Wm. Wittstadt, Jr. have already been appointed as Substitute Trustees for purposes of foreclosure, and have knowledge and experience in the foreclosure field, they should be authorized to carry out the foreclosure by sending notices to affected parties and publishing advertisements consistent with the terms of the Deed of Trust and District of Columbia Code, and thereafter selling the property at auction subject to confirmation or ratification by this Court.

23.   Alternatively, Mark H. Wittstadt and Gerard Wm. Wittstadt, Jr. may be appointed as Officers of the Court for purposes of selling the Property under SCR-308(b).

24.   The Plaintiff should be permitted to submit bid(s) at the sale aforesaid on credit up to the full amount of the debt and all costs incurred under the terms of the Note and Deed of Trust.

25.   After the foreclosure sale, the Substitute Trustees will file with the Court a Verified Report of Sale in compliance with SCR-308(b)(4).

26.   The Trustee / Officer appointed to sell the Property is entitled to receive a Trustee's Commission per the Deed of Trust and D.C. Code, and may request the same in the Verified Report of Sale.

27.   Pursuant to the Deed of Trust your Plaintiff is entitled to collect all expenses incurred in pursuing the remedies provided under the Deed of Trust, including, but not limited to reasonable attorneys' fees, filing fees, costs of publication, costs associated with the sale, mailing costs, and the costs of title evidence, proof of which will be submitted in the Verified Report of Sale prior to ratification or confirmation.

**WHEREFORE**, Plaintiff prays this Honorable Court grant the following relief:

1. That this Court find that the Defendant is in default on the mortgage obligation;

2. That this Court Order and appoint Mark H. Wittstadt and Gerard Wm. Wittstadt, Jr. to act as Trustee or Officer to sell the real property and improvements thereon known as 2223 R Street, SE, Washington, DC 20020 at public auction and to send appropriate notices and publish advertisements for the same;

3. That Mark H. Wittstadt and Gerard Wm. Wittstadt, Jr. should be permitted to auction the Property aforesaid on a date and in a manner deemed appropriate, to continue the auction for a period not to exceed thirty (30) days without further leave of court, and enter into a contract of sale for the property which contract shall be subject to review and confirmation or ratification by this Court;

4. That Mark H. Wittstadt and Gerard Wm. Wittstadt, Jr. shall be ordered to submit a Verified Report of Sale to this Court within a reasonable time following the auction;

5. That this Court award all appropriate commissions due to the Trustees and Auctioneer as set forth in the Deed of Trust;

6. That this Court award the Plaintiff their reasonable attorney fees and costs incurred in the instant action;

7. That this Court enter a deficiency judgment for any amounts remaining due on the Note following the completion of the foreclosure; and

8. That this Court grant such further relief as may be necessary and just under the circumstances.

## COUNT II - Judicial Sale (Alternative)

**Plaintiff incorporates by reference all those facts and allegations contained above.**

28. To the extent that a judicial foreclosure cannot be had, D.C. Code §42-816 also permits the Court to decree a judicial sale of the entire Property.

29. A judicial sale would be a sale in absolute, requiring joinder of all lienholders or parties who have an interest in the subject premises.

30. Lienholders known at this time include:

> Litton Loan Servicing, LP
> Serve On: c/o Brown & Associates
> 2316 Southmore
> Pasadena, TX 77502

> Litton Loan Servicing, LP
> Serve On: c/o Brown & Associates
> 2316 Southmore
> Pasadena, TX 77502

> Department of the Treasury - Internal Revenue Service
> Serve On: 500 N. Capital Street, NW
> Washington, DC 20221

31. The inclusion of said additional party will significantly increase the time and expense of this process to the detriment of the borrower without significant advances in justice or equity, therefore it is not believed that this approach should be used absent title defects or other issues which would prevent a normal judicial foreclosure.

32. No title defects or other issues are known to exist at this time.

33. To the extent that a defect or issue would be discovered in the course of this action, your Plaintiff moves this Court to permit amendment of the action to include any necessary party to accomplish complete justice.

WHEREFORE, the foregoing premises considered, to the extent that a judicial foreclosure cannot be had, your Plaintiff moves this Court to permit amendment of this Complaint to join all interested parties, to order a judicial sale in satisfaction of the debt owed to Plaintiff on such terms and conditions the Court may deem appropriate under the law, to enter a deficiency judgment should amounts remain unpaid on the Note following the sale, and to issue such other and

further direction as may be necessary to accomplish complete relief.

<u>**Verification**</u>

I solemnly affirm under the penalties of perjury that the account information set forth above are true to the best of my knowledge, information, and belief.

The Bank of New York Mellon Trust Co. N.A. f/k/a The Bank of New York Trust Co. N.A. as successor in interest to JPMorgan Chase Bank, National Association, f/k/a JPMorgan Chase Bank, as successor in interest to Bank One, National Association, as Trustee for ACE Securities Corp. Home Equity Loan Trust, Series 2003-HS1, Asset Backed Pass-Through Certificates

By: Ocwen Loan Servicing, LLC, its servicer for Plaintiff

Printed Name:      Shakiva Ruff

Signature:      _Shakiva Ruff_   10/16/2013

Title:      ~~Contract Management Coordinator~~

State of __FL__
County/City __Palm Beach__

On this __16th__ day of __October__, 2013, before me, the undersigned officer, personally appeared __Shakiva Ruff__ who is the __Contract Management Coordinator__ of Ocwen Loan Servicing, LLC, its servicer for The Bank of New York Mellon Trust Co. N.A. f/k/a The Bank of New York Trust Co. N.A. as successor in interest to JPMorgan Chase Bank, National Association, f/k/a JPMorgan Chase Bank, as successor in interest to Bank One, National Association, as Trustee for ACE Securities Corp. Home Equity Loan Trust, Series 2003-HS1, Asset Backed Pass-Through Certificates, known to me (or satisfactorily proven) to be the person whose name are subscribed to the within Verification and acknowledged he/she executed same in his/her capacity as __Contract Management Coordinator__ for the purposes therein contained.

In witness hereof I hereunto set my hand and official seal.

_Ellen M Berke_
NOTARY PUBLIC
My Commission expires: 12/3/13

NOTARY PUBLIC-STATE OF FLORIDA
Ellen M. Berke
Commission #DD933297
Expires: DEC. 03, 2013
BONDED THRU ATLANTIC BONDING CO., INC.

Respectfully submitted

Mark Wittstadt, Esq. No. 497735
Gerard Wm. Wittstadt, Jr., Esq. No. 497127
David Chen Esq. No. 1000517
Patrick R. Jules Esq. No. 1011142
Morris | Hardwick | Schneider, LLC
9409 Philadelphia Road
Baltimore, Maryland 21237
410-284-9600
pjules@closingsource.net
dchen@closingsource.net
Attorney for Plaintiff

# EXHIBIT A

01273001142

*1 of 2*

File No. AK9319Y
DEED-SHORT FORM D.C.

**This Deed,** made this 24th day of September, 1999, by and between 1438 E Street, S.E., L.L.C., a District of Columbia Limited Liability Company, by and through Todd W. Norris, Managing Member with the authority to so act, party of the first part, and Perry M. Bryant, party of the second part.

WITNESSETH, that in consideration of the sum of Ten Dollars ($10.00), the party of the first part does hereby grant unto the party of the second part, in fee simple, as Sole Owner, all that piece or parcel of land, together with the improvements, rights, privileges and appurtenances to the same belonging, situate in the District of Columbia, described as follows, to wit:

Lots Ninety-seven and Ninety-eight (97 & 98) in Square Fifty-six Hundred Twenty-four (5624) in a subdivision made by the United States Realty Company of Washington, D.C., Inc. of part of a tract of land known as "Randle Highlands", as per plat recorded in Liber County 21 at folio 30 among the Records of the Office of the Surveyor for the District of Columbia.

ALSO

Lot Ninety-six (96) in Square Fifty-six Hundred Twenty-four (5624) in a subdivision made by the United States Realty Company of Washington, D.C., as per plat recorded in Liber County 21 at folio 30 among the Records of the Office of the Surveyor for the District of Columbia; SAVING AND EXCEPTING therefrom the West 5.00 feet front on "R" Street, S.E., by a depth of 36.00 feet of said lot.

NOTE: At the date hereto the above described land is designated on the Records of the Assessor of the District of Columbia for taxation and assessment purposes as Lot 810 in Square 5624

AND the said party of the first part covenants that it will warrant specially the property hereby conveyed; and that it will execute such further assurances of said land as may be requisite.

WITNESS the hand and seal the day and year first hereinbefore written.

IN PRESENCE OF:

1438 E Street S.E. LLC

_____                    _____ (SEAL)
                                             1438 E Street, S.E., L.L.C.
                                             By: Todd W. Norris, Managing Member

District of Columbia, TO WIT:

01273001142

I, Philip A. Goiran                    , a Notary Public, in and for the jurisdiction aforesaid, do hereby certify that 1438 E Street, S.E., L.L.C., by Todd W. Norris, Managing Member, who is personally well known to me as the grantor in, and the person who executed the aforegoing and annexed deed, bearing the date of September 24, 1999, personally appeared before me in the said District and acknowledged the said deed to be his act and deed.

Given under my hand and seal this 24th day of September, 1999.

Notary Public

My Commission Expires: _____

PHILIP A. GOIRAN
Notary Public District of Columbia
My Commission Expires: July 31, 20
2003

AFTER RECORDING MAIL TO:
Law Offices Arthur F. Konopka
4530 Wisconsin Avenue
Suite 200
Washington, DC 20016

GRANTEE'S ADDRESS:
2223 R Street, SE
Washington, DC 20020

RE:CORDER OF DEEDS
HENRY H TERRELL
9900085324                    #
1275 Deeds        $15.00
1852 Surchg        $3.00
1852 Rec T.    $1523.00
1851 Tran Tx   $1523.00
TOTAL          $3078.00
CHEH #         $3078.00
CLERK A3   09/28/1999 11:52
CU                     52951

99 SEP 28 AM11:52

9900085324

**EXHIBIT B**

0106815301

# BALLOON NOTE
### (Fixed Rate)

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

March 18, 2003
[Date]                                [City]                                [State]

2223 R STREET SE, WASHINGTON, District Of Columbia 20020
[Property Address]

1.   **BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $          191,250.00     (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
    SouthStar Funding, LLC
. I will make all payments under this Note in the form of cash, check or money order.
    I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2.   **INTEREST**
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          9.250    %.
    The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

3.   **PAYMENTS**
    (A) Time and Place of Payments
    I will pay principal and interest by making a payment every month.
    I will make my monthly payments on the 1st          day of each month beginning on   May first, 2003        .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on     April 1, 2018                          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
    I will make my monthly payments at     400 Northridge Road, Ste. 1000
                                    Atlanta, GA    30350
or at a different place if required by the Note Holder.
    (B) Amount of Monthly Payments
    My monthly payment will be in the amount of U.S. $          1,573.37     .

MULTISTATE BALLOON FIXED RATE NOTE - Single Family - FANNIE MAE UNIFORM INSTRUMENT          Form 3260 1/01
Page 1 of 3
-870N (0205)          VMP MORTGAGE FORMS - (800)521-7291          Initials: PMB



**4.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.   BORROWER'S FAILURE TO PAY AS REQUIRED**

    **(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   **5.00**   % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

    **(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

    **(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

    **(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

    **(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.   UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:



Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
PERRY M BRYANT                    -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

*[Sign Original Only]*

0106815301

## PREPAYMENT PENALTY OPTION NOTE ADDENDUM
## BALLOON FIXED RATE PROGRAM

**FOR VALUE RECEIVED,** the undersigned Borrower(s) agree(s) that the following provisions be incorporated into that Balloon Fixed Rate Note (the "Note") of even date herewith executed by Borrower(s) in favor of SouthStar Funding, LLC                                  (the "Lender"), and also that certain Mortgage, Deed of Trust, or Security Deed, and all Riders referred to therein, of even date herewith (the "Security Instrument") executed by Borrower(s), as Grantor(s)/Trustor(s), in favor of the Lender, as beneficiary.   To the extent that the provisions of this Prepayment Penalty Option Note Addendum (the "Addendum") are inconsistent with the provisions of the Note and/or the Security Instrument, the provisions of the Addendum shall prevail over and shall supersede any such inconsistent provisions of the Note and the Security Instrument.

Borrower(s) and Lender hereby agree as follows:

Section Four (4) of the Note is amended to read as provided below.  In addition to the Covenants and Agreements made in the Security Instrument, Borrower(s) and Lender further covenant and agree as follows:

> I/We have the right to make payments of principal at any time before they are due.   The payment of principal only is known as a "prepayment".  When I/we make a prepayment, I/we will tell the Note Holder in writing that I/we am/are doing so.  If, within the first Thirty-six (36) Months following the date of the Note and the Security Instrument I/we make a full prepayment or partial prepayment(s), I/we will at the same time pay to the Note Holder a prepayment charge.   The prepayment charge will be equal to six (6) months advance interest on the amount of any prepayment that, when added to all other amounts prepaid during the twelve (12) month period immediately preceding the date of any prepayment, exceeds twenty percent (20%) of the original principal amount of the Note.

This loan is an Alternative Mortgage Loan within the boundaries of the Federal Alternative Mortgage Transaction Parity Act of 1982.

**IN WITNESS WHEREOF,** the Borrower(s) has/have executed under Seal this Addendum on this _____18th_____ day of ___March_____, _2003_____.

_____(SEAL)        _____(SEAL)
Borrower PERRY M BRYANT                               Borrower

_____(SEAL)        _____(SEAL)
Borrower                                              Borrower

MUBLNN1(MUBLNN1.OVL) 6/11/2001

# Allonge to Note

Note Date:      3/18/2003                                   Loan #:    0106815301

Borrower Name(s):     PERRY M BRYANT

Borrower Address:     2223 R STREET SE
                      WASHINGTON, DC 20020

Loan Amount:          $191,250.00

Lender Name:          SouthStar Funding, LLC

Pay to the Order of Without Recourse:

Bank One National Association as Trustee, in trust for the registered holders of ACE
Securities Corp., Home Equity Loan Trust, Series 2003-HS1 Asseft Backed Pass-
Through Certificates.

By:   _____
      SOUTHSTAR FUNDING, L.L.C.
              Toni Ward
           Vice President



BLNKALN (BLNKALN.OVL) REV.(8/3/1999)

**EXHIBIT C**

Return To:
SouthStar Funding, LLC
400 Northridge Rd. #1000
Atlanta, GA 30350

Prepared by:

*Stewart Title*
*5624/0810*

——————[Space Above This Line For Recording Data]——————

# DEED OF TRUST

0106815301
MIN    100190801068153013

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

(A) "Security Instrument" means this document, which is dated          March 18, 2003
together with all Riders to this document.

(B) "Borrower" is
   PERRY M BRYANT Unmarried

Borrower's address is   2223 R STREET SE, WASHINGTON, DC 20020
                                      . Borrower is the trustor under this Security Instrument.

(C) "Lender" is SouthStar Funding, LLC

Lender is a  Limited Liability Company
organized and existing under the laws of  Delaware
Lender's address is    400 Northridge Road, Ste. 1000, Atlanta, GA   30350

(D) "Trustee" is  *Lex Ruygrok*

Trustee's address is  *6310 Stevens Forest Rd*
                      *Columbia, Md 21046*

DISTRICT OF COLUMBIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

-6A(DC) (0100)      Form 3009 1/01
                    (rev. 5/01)
Page 1 of 15        Initials:
   VMP MORTGAGE FORMS - (800)521-7291

*BM*
*LL*

Doc# 2003038984

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated    March 18, 2003
The Note states that Borrower owes Lender
   ONE HUNDRED NINETY ONE THOUSAND TWO HUNDRED FIFTY & 00/100                 Dollars
(U.S. $      191,250.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    April 1, 2018

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☒ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |
| | | PREPAYMENT PENALTY RIDER |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the District of Columbia:

All that tract or parcel of land as shown on Schedule "A" attached hereto which is incorporated herein and made a part hereof.

Parcel ID Number:                                                            which currently has the address of
  2223 R STREET SE                                                                                [Street]
Washington, District of Columbia   20020      [Zip Code] ("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

⬤ -6A(DC) (0108)                          Page 3 of 15          Initials: _MB_
                                                                              Form 3009 1/01 (rev. 5/01)

EXHIBIT A

Lots Ninety-seven and Ninety-eight (97 & 98) in Square Fifty-six Hundred Twenty-four (5624) in a subdivision made by the United States Realty Company of Washington, D.C., Inc. of part of a tract of land known as "Randle Highlands", as per plat recorded in Liber County 21 at folio 30 among the Records of the Office of the Surveyor for the District of Columbia.

ALSO

Lot Ninety-six (96) in Square Fifty-six Hundred Twenty-four (5624) in a subdivision made by the United States Realty Company of Washington, D.C., as per plat recorded in Liber County 21 at folio 30 among the Records of the Office of the Surveyor for the District of Columbia; SAVING AND EXCEPTING therefrom the West 5.00 feet front on "R" Street, S.E., by a depth of 36.00 feet of said lot.

NOTE: At the date hereto the above described land is designated on the Records of the Assessor of the District of Columbia for taxation and assessment purposes as Lot 810 in Square 5624.

'The improvements thereon being known as No. 2223 R Street, SE.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all

Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien

which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance

proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien

which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). To the extent permitted by Applicable Law, Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the

new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall send a written notice of default to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice of default shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) whether failure to cure the default on or before the date specified in the notice will result in automatic acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence, as well as any late fees on delinquent payments.

If Lender invokes the power of sale, Lender shall send written notice of commencement of foreclosure as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall give notice of sale by public advertisement as prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of any parcel of the Property as prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein.

Trustee shall apply the proceeds of the sale in the following order: (a) to discharge all statutory liens, taxes, levies, and assessments, with costs and interest; (b) to discharge the expenses of executing the foreclosure sale including: (i) reasonable attorneys' fees; (ii) an auctioneer's fee; (iii) the auditor's fee; (iv) a commission to the Trustee or assignee for foreclosure in the amount of $ _____ or _____ % of the gross sale price, up to the amount permitted by Applicable Law; (c) to discharge, in the order of their priority, the remaining debts and obligations, if any, secured by this Security Instrument, with interest; (d) to discharge, in the order of their priority the remaining debts and obligations, if any, secured by any liens of record subordinate to this Security Instrument, with interest; and (e) to pay the balance, if any, to the owner of the Property, unless Applicable Law provides otherwise.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by recording a Deed of Appointment. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

6A(DC) (0105)          Page 12 of 16          Initials: ___          Form 3009 1/01 (rev. 6/01)

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                           TERRY M BRYANT                      -Borrower

                                           **2223 R STREET SE**
                                           **WASHINGTON, DC 20020**
                                                                              (Address)

                                           _____ (Seal)
                                                                              -Borrower

                                                                              (Address)

_____ (Seal)   _____ (Seal)
                                 -Borrower                                    -Borrower

                       (Address)                                  (Address)

_____ (Seal)   _____ (Seal)
                                 -Borrower                                    -Borrower

                       (Address)                                  (Address)

_____ (Seal)   _____ (Seal)
                                 -Borrower                                    -Borrower

                       (Address)                                  (Address)

-6A(DC) (0105)                    Page 14 of 16                    Form 3009 1/01 (rev. 5/01)

DISTRICT OF COLUMBIA, ss:

I,   *the Undersigned*                              , a Notary Public in and for the District
of Columbia, do hereby certify that

PERRY M BRYANT

personally known to me as the person(s) who executed the foregoing instrument bearing date of *18th*,
day of *March 2003*         , personally appeared before me in said District and acknowledged said
instrument to be his/her/their act and deed, and that he/she/they executed said instrument for the purposes
therein contained.

Witness my hand and official seal this *18th*   day of   *March   2003*

*Leanne Evans* (Seal)
Notary Public, D.C.

Lender Name and Address:   *SouthStar Funding, Inc*
*400 Northridge Rd., #1000*
*Atlanta, GA 30350*

Trustee Name and Address:   *Lex Ruygrok*
*4310 Stevens Forest Rd*
*Columbia, Md 21046*

-6A(DC) (0105)                    Page 18 of 16                    Form 3009 1/01 (rev. 6/01)

0106815301

## PREPAYMENT PENALTY OPTION RIDER
## BALLOON FIXED RATE PROGRAM

FOR VALUE RECEIVED, the undersigned Borrower(s) agree(s) that the following provisions be incorporated into that certain Mortgage, Deed of Trust, or Security Deed, and all Riders referred to therein, of even date herewith (the "Security Instrument") executed by Borrower(s), as Grantor(s)/Trustor(s), in favor of Southstar Funding, LLC (the "Lender"), as beneficiary, and also in that certain Balloon Fixed Rate Note (the "Note") of even date herewith executed by Borrower(s) in favor of Lender. To the extent that the provisions of this Prepayment Penalty Option Rider (the "Rider") are inconsistent with the provisions of the Security Instrument and/or the Note, the provisions of the Security Instrument shall prevail over and shall supersede any such inconsistent provisions of the Security Instrument and/or the Note.

Borrower(s) and Lender hereby agree as follows:

Section Four (4) of the Note is amended to read as provided below. In addition to the Covenants and Agreements made in the Security Instrument, Borrower(s) and Lender further covenant and agree as follows:

> I/We have the right to make payments of principal at any time before they are due. The payment of principal only is known as a "prepayment". When I/we make a prepayment, I/we will tell the Note Holder that I/we am/are doing so. If, within the first Thirty-six (36) Months following the date of the Note and the Security Instrument I/we make a full prepayment or partial prepayment(s), I/we will at the same time pay to the Note Holder a prepayment charge. The prepayment charge will be equal to six (6) months advance interest on the amount of any prepayment that, when added to all other amounts prepaid during the twelve (12) month period immediately preceding the date of any prepayment, exceeds twenty percent (20%) of the original principal amount of the Note.

This loan is an Alternative Mortgage Loan within the boundaries of the Federal Alternative Mortgage Transaction Parity Act of 1982.

IN WITNESS WHEREOF, the Borrower(s) has/have executed under Seal this Rider on this 18th day of March 2003.

_____ (SEAL)          _____ (SEAL)
Borrower   PERRY M BRYANT                  Borrower

_____ (SEAL)          _____ (SEAL)
Borrower                                   Borrower

MUBLNR1 (MUBLNR1.OV1) 6/11/2001

0106815301

# BALLOON RIDER TO MORTGAGE / DEED OF TRUST

This Balloon Rider to Mortgage / Deed of Trust is made          3/18/2003          , and is incorporated into and shall be deemed to amend and supplement the Mortgage / Deed of Trust made by the undersigned ("THE BORROWER") in favor of          SouthStar Funding, LLC

("THE LENDER") and dated as of even date herewith.

Additional Covenants.  In addition to the covenants and agreements made in the Mortgage / Deed of Trust, The Borrower and The Lender further covenant and agree as follows:

Balloon Payment

This loan must be paid in full at maturity.  I must repay the entire principal balance of the loan and unpaid interest then due.  The Lender is under no obligation to refinance the loan.  I will, therefore, be required to make payment out of other assets that I may own, or I will have to find a lender, which may be the lender I have this loan with, willing to lend me the money.  If I refinance this loan at maturity, I may have to pay some or all of the closing costs normally associated with a new loan even if I obtain financing from the same lender.

By Signing Below, Borrower accepts and agrees to the terms and covenants contained in the Balloon Rider to Mortgage / Deed of Trust.

In Witness Whereof, The Borrower has executed this Balloon Rider on          3/18/2003

PERRY M BRYANT

SSBRID (SSBRID.OVL) rev. 3/20/2001

# SECURITY AFFIDAVIT
## CLASS 1 AND CLASS 2

I, (We) _Perry Bryant_ , the owner(s) of the real property described within certify, subject to criminal penalties for making false statements pursuant to section 404 of the District of Columbia Theft and White Collar Crimes Act of 1982, effective December 1, 1982 (D.C. Law 4-164; D.C. Code 22-2405), that the real property described within is either Class 1 Property or Class 2 Property, as those classes of property are established pursuant to section 412a of District of Columbia Real Property Tax Revision Act of 1974, approved September 3, 1974 (88 Stat. 1051 D.C. Code 47-813), with 5 or fewer units.

_____
(Signature)

_____
(Signature)

Subscribed and sworn to before me this _18_ day of _March_ , 20_03_ .

TINA PROCOPIO
Notary Public, State of Maryland
County of Charles
My Commission Expires March 18, 2000

_Tina Procopio_
Notary Public



LT1-5-2013075118-1

APN #: 5624  0810
Prepared by: Joe Simmons
When Recorded Mail To:
Ocwen Loan Servicing,LLC
1661 Worthington Road, Suite 100
West Palm Beach, Florida, 33409
Phone Number: 561-682-8835
28709228665210
Attorney Code: 24508
MIN: 100190801068153013
MERS Ph.#: (888) 679 – 6377



LT2-0-0-1

### ASSIGNMENT OF DEED OF TRUST
### DISTRICT OF COLUMBIA

This ASSIGNMENT OF DEED(S) OF TRUST from MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), as nominee for SOUTHSTAR FUNDING, LLC, whose address is PO Box 2026 Flint, MI 48501-2026 its successors and assigns, ("Assignor) to THE BANK OF NEW YORK MELLON TRUST CO. N.A. F/K/A THE BANK OF NEW YORK TRUST CO. N.A. AS SUCCESSOR IN INTEREST TO JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, F/K/A JPMORGAN CHASE BANK, AS SUCCESSOR IN INTEREST TO BANK ONE, NATIONAL ASSOCIATION, AS TRUSTEE FOR ACE SECURITIES CORP. HOME EQUITY LOAN TRUST, SERIES 2003-HS1, ASSET BACKED PASS-THROUGH CERTIFICATES, whose address is c/o Ocwen Federal Bank FSB, 1661 Worthington Road, Suite 100, West Palm Beach, Florida, 33409, (Assignee) its successors and assigns, all its rights, title and interest in and to a certain mortgage duly recorded in the Office of the Recorder of Deeds, DISTRICT OF COLUMBIA, as follows:

That certain promissory note or obligation dated MARCH 18, 2003 in the principal amount of $ 191,250.00, executed by PERRY M. BRYANT and more fully described or referred to in a deed of trust of even date therewith to LEX RUYGROK, as Trustee(s) and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ACTING SOLELY AS NOMINEE FOR SOUTHSTAR FUNDING, LLC, as Beneficiary, and filed of record on APRIL 03, 2003, at Instrument No: 2003038984

PREMISES KNOWN AS: 2223 R STREET SE, WASHINGTON, DC, 20020
PREMISES DESCRIBED AS: SQUARE: 5624 LOT: 97 & 98

*SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.*

This Assignment is made without recourse, representation or warranty.
Dated: JUNE 13, 2013

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
(MERS)

Doc# 2013075118 Fees:$31.50
06/27/2013   11:20AM Pages 1
Filed & Recorded in Official Records of
WASH DC RECORDER OF DEEDS IDA WILLIAMS

BY:
NAME:  Noemi Morales
TITLE:  Assistant Secretary

STATE OF FLORIDA          )
                          )ss.
COUNTY OF PALM BEACH      )

Subscribed and sworn to me this 12TH day of JUNE, 2013, by    Noemi Morales    , the Assistant Secretary
at MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. He/She is personally known to me.

Notary Public          Christopher Kelley



Notary Public State of Florida
Christopher Kelley
My Commission EE 561883
Expires 12/30/2016

RECORDING          $      25.00
SURCHARGE          $       6.50

L-1
M

**EXHIBIT E**

you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. To avoid the need for such an adjustment, please call our office at the above number for the exact amount due as of the date you intend to tender payment. <u>This payoff amount is provided in accordance with federal law, but this letter is not a demand for payment of this payoff amount.</u> The purpose of this letter is simply to notify you of your default, the amount of the delinquency, and the fact that if the delinquency is not cured by the date specified in the previous paragraph, the entire debt on your loan will be due.

Unless the aforesaid reinstatement amount is paid within the next thirty days, we have been instructed to proceed with foreclosure and the public sale of this property. You have the right to reinstate the loan even after acceleration, if on or before the reinstatement period ends, you do the following:

1.    Pay our client all installments, and late charges due on your loan.
2.    Pay our client all reasonable expenses, including, but not limited to attorney fees, trustee fees and expenses our client has incurred in enforcing their rights.
3.    Cure all breaches of any other covenants or agreements made by you in the Note, Security Instrument and Loan Documents.
4.    Pay any and all fees required under the terms of the Note or Security Instrument.
5.    Take such other and further action, which our client may reasonably require assuring that their lien, and interest in the property is protected.

You have the right to bring a court action if you believe that the loan is not in default or if you believe that you have any other defense to the acceleration and sale. We are also required by law to inform you that if you notify us in writing that you do not wish for us to contact you by telephone at your place of employment, then no such contact shall be made. However you will need to provide our client with a phone number where you can be reached.

IF YOU HAVE BEEN DISCHARGED IN BANKRUPTCY. Please be advised that if the mortgage loan referenced has been discharged in a bankruptcy case, this statement does not represent and is not intended to be a demand for payment.

Additionally, if you previously received a discharge in a bankruptcy case involving this loan and did not sign a reaffirmation agreement, then this letter is not an attempt to collect a debt from you personally.

Homeownership counseling may be available to you by contacting a HUD approved housing counseling agency. Call 1-800-569-4287 or 1-800-877-8339 for the housing counseling agency nearest you.

Finally, if you should like to discuss this matter, please contact our client directly in care of Ocwen Loan Servicing, LLC at 800-746-2936.

**This is an attempt to collect a debt, and any information obtained will be used for that purpose. Unless you notify this office within thirty (30) days after receiving this notice**

This is an attempt to collect a debt and any information obtained may be used for that purpose.

A GLOBAL WALZ LETTER - Letter Demand
DC-93000303-13
2013-05-08 @ 10:22:50 / JA



that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days from receiving this notice, this office will obtain verification of the debt or obtain a copy of the judgment if one has been obtained and mail you a copy of such judgment or verification. This office will provide you with the name and address of the original creditor, if different from the current creditor, if you request the same from this office in writing within thirty (30) days after receiving this notice.

Sincerely yours,

Morris | Hardwick | Schneider

This is an attempt to collect a debt and any information obtained may be used for that purpose.



A GLOBAL WALZ LETTER - Letter Demand
DC-93000303-13
2013-05-08 @ 10:22:50 / JA



**EXHIBIT F**

Department of Defense Manpower Data Center

Results as of : Oct-09-2013 07:46:25

SCRA 3.0



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

Last Name: <u>BRYANT</u>
First Name: <u>PERRY</u>
Middle Name:
Active Duty Status As Of: <u>Oct-09-2013</u>

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty. HOWEVER, WITHOUT A SOCIAL SECURITY NUMBER, THE DEPARTMENT OF DEFENSE MANPOWER DATA CENTER CANNOT AUTHORITATIVELY ASSERT THAT THIS IS THE SAME INDIVIDUAL THAT YOUR QUERY REFERS TO. NAME AND DATE OF BIRTH ALONE DO NOT UNIQUELY IDENTIFY AN INDIVIDUAL.

*Mary M. Snavely-Dixon*

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Arlington, VA 22350

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service via the "defenselink.mil" URL: http://www.defenselink.mil/faq/pis/PC09SLDR.html. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 521(c).

This response reflects the following information:  (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1).  Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available.  In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds.  All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support.  This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs).  Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.  SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods.  Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction.  The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester.  Providing erroneous information will cause an erroneous certificate to be provided.

## Certificate ID: P4E5893F80E08F0

Department of Defense Manpower Data Center

Results as of : Oct-16-2013 00:52:32

SCRA 3.0



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

Last Name: BRYANT

First Name: PERRY

Middle Name: M

Active Duty Status As Of: Oct-16-2013

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individual's active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty. HOWEVER, WITHOUT A SOCIAL SECURITY NUMBER, THE DEPARTMENT OF DEFENSE MANPOWER DATA CENTER CANNOT AUTHORITATIVELY ASSERT THAT THIS IS THE SAME INDIVIDUAL THAT YOUR QUERY REFERS TO. NAME AND DATE OF BIRTH ALONE DO NOT UNIQUELY IDENTIFY AN INDIVIDUAL.

*Mary M. Snavely-Dixon*

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Arlington, VA 22350

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service via the "defenselink.mil" URL: http://www.defenselink.mil/faq/pis/PC09SLDR.html. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 521(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected.

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

## Certificate ID: 05B9Q531N07DKA0

**EXHIBIT G**

*DC-0303-13*


LT1-5-2013099472-1

Return to:
Morris | Hardwick | Schneider, LLC
9409 Philadelphia Road
Baltimore, MD 21237


LT2-0-0-3

## DEED OF APPOINTMENT OF SUBSTITUTE TRUSTEES

This Deed of Appointment of Substitute Trustees made this ___12___ day of ___Aug___, 2013, by The Bank of New York Mellon Trust Co. N.A. f/k/a The Bank of New York Trust Co. N.A. as successor in interest to JPMorgan Chase Bank, National Association, f/k/a JPMorgan Chase Bank, as successor in interest to Bank One, National Association, as Trustee for ACE Securities Corp. Home Equity Loan Trust, Series 2003-HS1, Asset Backed Pass-Through Certificates who hereby designate and appoint Mark H. Wittstadt and Gerard Wm. Wittstadt, Jr. as Substitute Trustees (either of whom may act independently of the other) in the place and stead of Lex Ruygrok as Trustees.

WHEREAS, under a certain Deed of Trust, dated March 18, 2003 and recorded among the Land Records of District of Columbia, in Instrument #2003038984, the hereinafter described property was conveyed to Lex Ruygrok, as Trustee, to secure a Note of even date therewith in the amount of $191,250.00 executed by Perry M. Bryant and on the following secured property, to wit:

FOR LEGAL DESCRIPTION SEE ATTACHED EXHIBIT A

WHEREAS, the Deed of Trust provides that the Noteholders shall have the right and power to substitute one or more of the Trustees in place of the original Trustees named in the said Deed of Trust.

NOW, THEREFORE, The Bank of New York Mellon Trust Co. N.A. f/k/a The Bank of New York Trust Co. N.A. as successor in interest to JPMorgan Chase Bank, National Association, f/k/a

DCFC - Deed Appt Of Substitute Trustees OCWEN
DC-93000303-13
2013-07-19 @ 09:59:40 / BK

*7913156*

L-3

JPMorgan Chase Bank, as successor in interest to Bank One, National Association, as Trustee for ACE Securities Corp. Home Equity Loan Trust, Series 2003-HS1, Asset Backed Pass-Through Certificates , the current holder(s) of the Note described herein and secured by the aforesaid Deed of Trust and in exercise of the powers contained in the said Deed of Trust do hereby nominate, designate and appoint MARK H. WITTSTADT and GERARD WM. WITTSTADT, JR as substitute trustees in the place and stead of Lex Ruygrok with all powers, rights, duties and authority of the superseded Trustees.

WITNESS the hands and seals of the said Noteholders.

> Ocwen Loan Servicing, LLC, as servicer for The Bank of New York Mellon Trust Co. N.A. f/k/a The Bank of New York Trust Co. N.A. as successor in interest to JPMorgan Chase Bank, National Association, f/k/a JPMorgan Chase Bank, as successor in interest to Bank One, National Association, as Trustee for ACE Securities Corp. Home Equity Loan Trust, Series 2003-HS1, Asset Backed Pass/Through Certificates

> By: _____
>
> Signature: _____ Chris Heinichen _____
>
> Title: _____ Contract Manager _____

STATE OF FLORIDA

COUNTY OF PALM BEACH

The foregoing instrument was acknowledged and sworn before me ____ Jami Dorobiala ____ this 12 day of AUUST, 2013, by ____ Chris Heinichen ____ as a ____ Contract Manager ____ of Ocwen Loan Servicing, LLC, who is personally known to me or has produced _____ as identification.

Notary Public State of Florida
Jami Dorobiala
My Commission FF 008181
Expires 04/16/2017

NOTARY PUBLIC State of Florida
Jami Dorobiala

## EXHIBIT A

Lots Ninety-seven and Ninety-eight (97 & 98) in Square Fifty-six Hundred Twenty-four (5624) in a subdivision made by the United States Realty Company of Washington D.C., Inc., of part of a tract of land known as "Randle Highlands", as per plat recorded in Liber County 21 at folio 30 among the Records of the Office of the Surveyor for the District of Columbia.

ALSO

Lot Ninety-six (96) in Square Fifty-six Hundred Twenty-four (5624) in a subdivision made by United States Realty Company of Washington, D.C., as per plat recorded in Liber County 21 at folio 30 among the Records of the Office of the Surveyor for the District of Columbia; Saving and Excepting therefrom the West 5.00 feet front on "R" Street, S.E., by a depth of 36.00 feet of said lot.

NOTE: At the date hereto the above described land is designated on the Records of the Assessor of the District of Columbia for taxation and assessment purposes as Lot 810 in Square 5624.

The improvements thereon being known as No. 2223 R Street, SE

Doc# 2013099472 Fees:$31.50
08/26/2013   10:48AM Pages 3
Filed & Recorded in Official Records of
WASH DC RECORDER OF DEEDS IDA WILLIAMS

RECORDING
SURCHARGE            $        25.00
                     $         6.50

DCFC - Deed Appt Of Substitute Trustees OCWEN
DC-03000303-13
2013-07-10 @ 09:59:40 / BK

*7913156*